IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO.: WDQ-12-0265 |
| JOSEPH OSIOMWAN | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

On May 15, 2012, Joseph Osiomwan and Larry Brown were indicted for (1) conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846, and (2) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1).[1] ECF No. 15. On May 20, 2013, Osiomwan waived his Sixth Amendment right to a jury trial. ECF No. 70. From May 20 to May 21, 2013, the Court held a bench trial. By way of the accompanying Verdict, and for the following reasons, this Court will find Defendant Joseph Osiomwan guilty on Count II and a lesser included offense on Count I.

---

[1] The indictment charged a duplicative count of possession with intent to distribute; it was dismissed at trial on the government's motion.

I.  Findings of Fact

As required by Fed. R. Crim. P. 23(c), the Court makes the following findings of fact:[2]

1. Osiomwan and his wife owned Woodland Motors, a used car dealership. Rough Tr. at 168.

2. Larry Brown, a/k/a "Fat Dinky," worked for Woodland Motors. Rough Tr. at 21.

3. On March 15, 2012, Brown called Osiomwan and asked for "five yellow receipts," meaning five grams of heroin. Call Number 226; Rough Tr. at 32.

4. Osiomwan and Brown met at a food court to exchange the drugs. Call Number 322; Rough Tr. at 33.

5. On April 1, 2012, Osiomwan called an unknown person in Benin; although much of the call is unintelligible or in another language, the speakers clearly reference "100,000," "150,000," and "300 and something thousand." See Call Number 176; Rough Tr. at 41.

---

[2] The facts are taken from this Court's recollection of trial testimony, the rough or preliminary trial transcript ("Rough Tr."), and trial exhibits. Of the calls played at trial, the Court specifically relies on Call Numbers 226, 322, 176, 5541, 118, 5717, 5731, 5776, 5907, 5936, 5891, 5943, 5938, 318, 320, 6149, 6154, and 6204.

6. On May 1, 2012, Roger Willoughby called Larry Brown and requested heroin in coded language[3]; Brown told Willoughby to arrive early the next day. Call Number 5541; Rough Tr. at 43.

7. On May 2, 2012, Osiomwan was near Philadelphia, Pennsylvania. Rough Tr. at 50; see Call Number 118.

8. While Osiomwan was there, an unknown man called Osiomwan to arrange a meeting place. See Call Number 118.

9. Also that day, Willoughby met Brown at Woodland Motors. Rough Tr. at 46; see Call Number 5717.

10. An hour later, Willoughby called Brown and stated "She not there," meaning that the heroin was of poor quality. See Call Number 5731; Rough Tr. at 50.

11. Two hours later, Osiomwan then called Brown, who reported "All no's," indicating that samples of heroin were of poor quality. Call Number 5776; Rough Tr. at 55.

12. Brown had distributed at least one sample and was attempting to distribute at least two more. See Call Numbers 5907, 5936, 5891; Rough Tr. at 57-58.

---

[3] Willoughby asked if he was "going to be crying" and Brown responded that Willoughby was going to "be happy." Call Number 5541.

13. Heroin samples are often between one and three grams. Rough Tr. at 48.

14. That evening, Willoughby called Brown and reported "Seven no's and four yeahs"--meaning that seven other persons reported that heroin samples were poor quality and four indicated they were good--and said "I told ya." Call Number 5943; Rough Tr. at 66.

15. Willoughby was then stopped by the police and 0.86 grams of heroin in a piece of brown paper was recovered from him. Rough Tr. at 47, 181; Gov't Ex. 16.

16. Also that evening, Osiomwan returned to Baltimore. *See* Rough Tr. at 59-60; Call Number 5938.

17. On May 3, 2012, Osiomwan was called by the unknown man who had called him near Philadelphia; Osiomwan asked for an account number because the cost was too great to transfer funds through Western Union. Call Number 318.

18. A minute later, the unknown male called back, and he and Osiomwan have difficulty communicating in coded language, mentioning amounts or prices as 50, 30, 600, 650, 36, and 29. Call Number 320.

19. Around this time, Osiomwan entered 5404 Northwood Drive in Baltimore and left after a few minutes. Rough Tr. 149-150.

20. Osiomwan and Brown then drove around Baltimore City, where Brown distributed heroin to at least two other persons. *See* Rough Tr. at 74-77; Call Numbers 6149, 6154, 6204.

21. That evening, Osiomwan again entered 5404 Northwood Drive; he left carrying a plastic bag. *See* Rough Tr. at 183-84.

22. Officers then arrested Osiomwan and recovered from his pocket three "fingers"[4] that contained 28.5 grams of heroin. Rough Tr. at 184; Gov't Ex. 16.

23. About one pound of marijuana was recovered from the plastic bag. Rough Tr. at 126.

24. About 14 kilograms of marijuana, mannite (a cutting (i.e., diluting) agent for heroin), packaging materials, and hand-written prepared responses for immigration officials' questions were recovered from 5404 Northwood Drive. Gov't Exs. 8, 9, 10a-10f, 12, 16; Rough Tr. at 94.

---

[4] "Finger" is a term for finger-sized heroin packages designed to be swallowed by drug couriers; each finger typically contains ten grams of heroin. Rough Tr. at 92, 109.

25. Osiomwan's wallet contained a change of address card listing his address as 5404 Northwood Drive; an invoice from AAA appliance for Osiomwan at 5404 Northwood Drive was also recovered from the residence. Gov't Exs. 6, 11.

26. Brown's home was searched, and a broken finger of suspected heroin was seized.[5] Rough Tr. at 108.

II. Conclusions of Law

    A. Count One: Conspiracy to Distribute and Possess with Intent to Distribute Heroin (21 U.S.C. § 846).

        1. Elements of the Offense

Osiomwan is charged with conspiracy to distribute and possession with intent to distribute one kilogram or more of a mixture or substance containing heroin from June 2010 until on or about May 3, 2012. ECF No. 15 at 1. 21 U.S.C. § 846 prohibits conspiracies to commit drug offenses. The elements of this charge are:

> (1) an agreement between two or more persons to engage in conduct that violates a federal drug law--here, to distribute or possess narcotics with intent to distribute; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy.

*United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010) (internal quotation marks omitted).

---

[5] There is no evidence that this was confirmed to be heroin.

The government has proved, beyond a reasonable doubt, that Osiomwan and Brown had an agreement to distribute heroin--a schedule I controlled substance[6]--of which Osiomwan was aware and voluntarily participated as shown by, *inter alia*, Brown's call to Osiomwan for five "yellow receipts" that were delivered at the food court, Brown's reporting of customer responses to the quality of the heroin samples ("no's") to Osiomwan, and Brown's distribution to Willoughby. *See* Call Numbers 226, 322, 5731, 5776; Rough Tr. at 32-33, 50, 55.

2. Amount of Heroin

Section 841(b) provides different penalties based the amount of heroin involved in the conspiracy: (1) imprisonment of 10 years to life for one kilogram or more of a mixture or substance containing heroin, (2) five to 40 years imprisonment for 100 grams or more, and (3) no more than 20 years for a lesser amount. 21 U.S.C. § 841(b)(1)(A)(i), (B)(i), (C); *see id.* § 846 (incorporating penalties into conspiracy offense). The Court must determine the quantity involved.

Although Shutt testified that the price of heroin from West Africa was $50,000 per kilogram, *see* Rough Tr. at 41, the recordings of Osiomwan apparently discussing pricing with unknown persons are difficult to understand because of the foreign language used in one call and the coded language used in

---

[6] *See* 21 U.S.C. § 812(b)(10).

7

both calls. *See* Call Numbers 176, 320. Further, it is unclear whether these numbers referred to money or quantities of heroin, marijuana, or something else. Accordingly, the government has not proved beyond a reasonable doubt the quantity of heroin--if heroin was the subject of the calls--through these recordings.

There is evidence that Brown distributed samples of heroin to other customers, but there is no evidence of the weight of those samples. The 28.5 grams seized from Osiomwan, the 0.86 grams seized from Willoughby, and the approximately five grams delivered to Brown total 34 grams.[7] *See* Gov't Ex. 16; Rough Tr. at 32-33. The government must prove an additional 66 grams for additional penalties to apply. Even assuming that the conspiracy intended to distribute heroin in other than sample quantities, the contemplated amounts to be distributed are unproven. Accordingly, the government has failed to prove beyond a reasonable doubt that the conspiracy involved 100 grams or more of heroin.[8] The Court will find Osiomwan guilty of the lesser included offense of conspiracy to distribute and possess

---

[7] There is no evidence that the substance in the finger seized from Brown was actually heroin.

[8] Of course, at sentencing, the government may attempt to prove a higher quantity by a preponderance of the evidence. *See United States v. Perry*, 560 F.3d 246, 258-59 (4th Cir. 2009); U.S.S.G. § 2D1.1.

with intent to distribute a quantity of heroin. 21 U.S.C. §§ 841(a)(1), (b)(1)(C); 846.

B. Count Two: Possession with Intent to Distribute Heroin (21 U.S.C. § 841(a)(1)).

Osiomwan is charged with possession with intent to distribute a mixture or substance containing heroin on or about May 3, 2012. ECF No. 15 at 2. Under 21 U.S.C. § 841(a)(1), it is "unlawful for any person knowingly or intentionally . . . distribute . . . or possess with intent to . . . distribute . . . a controlled substance."[9] The elements of the offense are "(1) possession of the controlled substance; (2) knowledge of the possession; and (3) intent to distribute." *United States v. Hall*, 551 F.3d 257, 267 n.10 (4th Cir. 2009). Intent to distribute may be inferred from the quantity possessed. *See United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996).

The government has proved, beyond a reasonable doubt, that Osiomwan possessed heroin with intent to distribute. The 28.5 grams of heroin seized from Osiomwan shows his intent to distribute. Gov't Ex. 16; *see United States v. Branch*, 168 F.3d 483 (table), 1998 WL 811698, at *4 (4th Cir. 1998). His actual possession of the fingers and his recorded conversations show

---

[9] The indictment also charged Osiomwan with aiding and abetting the possession with intent to distribute under 18 U.S.C. § 2.

that his possession was knowing. The Court will find Osiomwan guilty on Count II.

III. Conclusion

For the reasons stated above, the Court will find the Defendant Joseph Osiomwan guilty on Count II and a lesser included offense on Count I.

_____6/5/13_____   _____/s/_____
Date                          William D. Quarles, Jr.
                              United States District Judge